AT THE

OCTOBER SESSION 1864, IN BOSTON.

━━━━━━

PRESENT:

HON. GEORGE T. BIGELOW, CHIEF JUSTICE.
HON. CHARLES A. DEWEY, ⎤
HON. THERON METCALF, ⎟
HON. EBENEZER R. HOAR, ⎬ JUSTICES.
HON. REUBEN A. CHAPMAN, ⎦

---

## BARNSTABLE COUNTY.

INHABITANTS OF WELLFLEET *vs.* INHABITANTS OF TRURO.

If a deed of land, in describing the granted premises, begins at a point a certain distance "due south of A.'s southeast corner bound," such point is to be found by measuring due south from the southeast corner of the land actually owned by A., although the bound at the corner of the land occupied by him is at a different place.

Under Rev. Sts. c. 45, § 1, cl. 4, a person does not acquire a settlement in a town by living therein undisturbed for three years in a house built by mistake upon the land of another, adjacent to his own land, and having outbuildings upon his own land.

CONTRACT brought to recover for supplies furnished to a pauper.

At the second trial in the superior court, before *Russell*, J., after the decision reported in 5 Allen, 137 it was contended by the defendants that the pauper had acquired a settlement in

Wellfleet, under Rev. Sts. *c.* 45, § 1, *cl.* 4, by owning real estate in that town and living on the same three years successively The plaintiffs contended that he had built a house upon land adjoining his own, and it became material to determine the location of his land.* The first point in the description contained in his deed was, "just five rods due south of Benjamin R. Witherell's southeast corner bound;" and there was evidence tending to show that at the date of this deed the southeast corner of Witherell's fence was further south than the southeast corner of the land which he owned. The judge instructed the jury that the point in the description of the pauper's land was to be ascertained by measurement from the southeast corner of the land actually owned by Witherell, if the land occupied by him differed from that which he owned.

The defendants also offered evidence tending to show that, even if the pauper's house did not stand upon his own land, he had a privy, woodpile and place for drying clothes upon his own land ; but the judge instructed the jury that, in order to gain a settlement in Wellfleet, it was necessary that some habitable part of the pauper's house should have stood upon his own land in that town.

The jury returned a verdict for the plaintiffs, and found specially that no portion of the pauper's house stood upon his own land. The defendants alleged exceptions.

*G. Marston,* for the defendants. The expression in the deed referred to an existing monument; or, at least, the question should have been submitted to the jury. *Williston* v. *Morse,* 1C Met. 17. *Stone* v. *Clark,* 1 Met. 378. The pauper lived upon a portion of his land. The incidents named were a part of his dwelling-house. Burrill's Law Dict. Curtilage and Dwelling-House. 4 Bl. Com. 225. Shep. Touchstone, 94. 3 Inst. 64. 2 East P. C. 492. *Devoe* v. *Commonwealth,* 3 Met. 325. It was for the jury to find whether any part of the curtilage was on the pauper's land.

*J. M. Day,* for the plaintiffs.

DEWEY, J. 1. The instruction of the court that the land of the pauper was to be located by measurement from the southeast

corner of the land actually owned by Witherell, in distinction from that which he might then occupy, was fully authorized by the decision of this court in *Cleaveland* v. *Flagg*, 4 Cush. 76.

2. The remaining question is, whether, upon any proper instructions, the jury could have been authorized to find that the pauper had acquired a settlement in Wellfleet by owning real estate in that town, and living on the same three years successively. It was found by the jury that no portion of his dwelling-house was situated on his own land. It is only by considering contiguous land used by him for certain purposes stated, as land on which he lived, that the settlement in Wellfleet can be established. This land is said to have been a curtilage to the dwelling-house, and it is contended that the owner who occupied the dwelling-house may therefore be said to have lived on the land thus used in connection with it.

It seems to us that such a construction would be extending this mode of gaining a settlement under the provision of the statute too far. A man must be said to be living on the land of another, whose entire dwelling-house is situated upon such other person's land. It is the location of the house, and sometimes even of that portion of the house where the occupant eats and sleeps, that fixes with precision the place where he lives, whenever that point is a material one. The case of *Abington* v. *North Bridgewater*, 23 Pick. 170, arose under a different provision of the early statutes; giving a settlement to a party residing in a town one year, without being legally warned to depart. The only point apparently deemed important in deciding the question of residence was the locality of the dwelling-house, and in which of the towns the habitable part of it was situated. In deciding the question whether one lives on one parcel of land or another, the location of the dwelling-house which he occupies would seem to be the controlling fact. In the opinion of the court the instructions upon this point were correct.

*Exceptions overruled.*